# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**KIMCHERIE RIOS,**

          **Plaintiff,**

**v.**                                                        **Case No:   6:19-cv-595-Orl-LRH**

**COMMISSIONER OF SOCIAL
SECURITY,**

          **Defendant.**

_____

## MEMORANDUM OF DECISION

Kimcherie Rios ("Claimant"), who is proceeding *pro se*, appeals the Commissioner of Social Security's final decision denying her applications for disability benefits. (Doc. 1). The Claimant raises several arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for further proceedings. (Doc. 23). The Commissioner argues that the Administrative Law Judge ("ALJ") committed no legal error and that her decision is supported by substantial evidence and should be affirmed. (Doc. 24). Upon review of the record, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.

## I.    Procedural History

This case stems from the Claimant's August 7, 2017 applications for disability insurance benefits and supplemental security income. (R. 249-56). The Claimant alleged a disability onset date of August 2, 2017. (R. 249, 251). The Claimant's applications were denied on initial review and on reconsideration. The matter then proceeded before an ALJ, who, after holding a hearing (R. 32-54) where the Claimant was represented by counsel, entered a decision on October 31, 2018

denying the Claimant's applications for disability benefits.  (R. 11-23).  The Claimant requested review of the ALJ's decision, but the Appeals Council denied her request for review on February 8, 2019.  (R. 1-3).  This appeal followed.

## II.    The ALJ's Decision

In reaching her decision, the ALJ performed the five-step evaluation process set forth in 20 C.F.R. § 404.1520(a) and § 416.920(a).[1]  First, the ALJ determined that the Claimant's last date insured is December 31, 2021.  (R. 13).  Next, the ALJ found the Claimant suffers from the following severe impairments: obesity, multiple sclerosis, asthma, mild lumbar degenerative changes, mild to moderate foraminal narrowing at C4-5 and C5-6; thoracic protruding disc at T6-7; and migraines.  (R. 14).  The ALJ also found that the Claimant suffers from the following non-severe impairments: diplopia and depression.  (R. 14-16).  The ALJ, however, determined that the Claimant does not have an impairment or combination of impairments that meets or medically equals any listed impairment.  (R. 16).

The ALJ next found that the Claimant has the residual functional capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. § 404.1567(b) and § 416.967(a)[2] with the following

---

[1] An individual claiming Social Security disability benefits must prove that he or she is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy.  *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920(a).

[2] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

additional limitations:

> [O]ccasional climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds, occasional balancing, avoiding a concentrated exposure to extreme heat, cold, fumes, odors, dusts, gases or poor ventilation, avoiding a concentrated exposure to hazards (such as machinery or heights), with frequent but not constant handling and fingering, and with an ability for simple routine tasks during an 8 hour workday.

(R. 16).  In light of this RFC, the ALJ found that the Claimant was unable to perform her past relevant work.  (R. 21).  However, the ALJ found the Claimant could perform other work in the national economy, including work as a stuffer, addresser, and telephone order clerk.  (R. 21-22).  Accordingly, the ALJ concluded that the Claimant was not disabled between her alleged onset date (August 7, 2017) through the date of the decision (October 31, 2018).  (R. 22-23).

## III.  Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

IV.     **Analysis**

The Claimant, as discussed above, is proceeding *pro se* and filed a two-page memorandum

in support of this appeal.   (Doc. 23 at 1-2).   The memorandum states in its entirety, as follows:

I, Kimcherie Rios am requesting reconsideration of Disability.   I suffer from Multiple Sclerosis.   I have been continuously fighting just to be able to get out of bed in the mornings, which is nearly impossible.   I have constant uncontrollable chronic pain, fatigue, inflammation in my joints, which causes swelling and tingling in several body parts.   These symptoms make it difficult to follow through with most daily tasks such as laundry, work, making dinner, getting out of bed, taking a shower, and sometimes even getting dressed.   At times, I am unable to stand or sit for 10 minutes at a time without being in a significant amount of pain.   This disease even causes memory loss and forgetfulness which is very depressing seeing as I am only 39.   My eyes get inflamed and cause blurry vision sometimes lasting a day at a time. I've lost all muscle function in my eye for approximately 5 days.   In May of 2017, I was hospitalized due to a stroke because of my MS.   I was then in and out of the hospital for approximately the entire year.   This caused extreme weakness on my entire right side of my body, which is still to this day unable to perform normally. My anxiety attacks and migraines are fierce and disabling alone.   My doctors don't foresee my condition getting any better and continue to find new symptoms due to my MS.

Due to my chronic pain, I take pain medicine, so its hard to stay on a strict routine because of my extreme pain levels that I endure on a daily basis.   The chronic fatigue I feel on a normal day is tripled with side effects from my daily meds.   My normal sleep is possibly 2 hours at a time and mostly restless.   Exhaustion makes it hard to stay focused throughout the day.   I get electrical pain which can lasts seconds or days.   There are times I cannot even remember what bills I need to pay.   These illnesses have made me very depressed over the years and I have high levels of anxiety now, which is why I saw a therapist.   I experience powerful muscle spasms which in turn cause intensifying pain throughout my entire body.   The medicines that I take only slightly ease the pain but are still disabling at the most.   The sporadic weakness in my limbs makes it hard to even grab or pick up light objects.   There are times it can be difficult to even operate a vehicle, turn my head, move my arms, and at times walk.

I experience several flare ups.   Some last a few days and others last a few weeks.   I am using a walker more frequently than last year.   I have excruciating pain in my right knee. I was recently diagnosed with bilateral carpal tunnel syndrome.   I was referred by my neurologist to a hand surgeon as routine hand and wrist braces were ineffective for relief.   I also suffer from arthritis in lower back.   I have been unable to begin specific MS medication due recent flare ups and high white cell count.   A nurse was sent to my home to perform tests to see if I am healthy enough to finally

> begin MS medication.  This new medication has several side effects including reduced heart beat and low blood pressure.
>
> These are the occurrences that I encounter on a daily basis.  I never know what part of my body or entire body will hurt or not work correctly, leaving me unsure of what I will be able to do for myself each day.
>
> With all this being said, I ask you to please reconsider your decision for SSDI. My doctors as stated in their letters render me disabled and have not seen or expect any improvement as there has only been progression in my MS thus far.

(Doc. 23 at 1-2).  Along with the memorandum, the Claimant attached the following: 1) part of a treatment note dated April 1, 2019 (Doc. 23 at 3-4); 2) an undated medication list detailing medications prescribed between February 2019 and June 2019 (*Id*. at 5); and 3) what appears to be a screenshot from an online patient portal dated June 16, 2019 (*Id*. at 6-7).

The Commissioner interpreted the Claimant's memorandum as raising two arguments: 1) the ALJ's decision concerning the Claimant's subjective complaints of pain is not supported by substantial evidence; and 2) the new evidence attached to the memorandum requires remand pursuant to sentence six of 42 U.S.C. § 405(g).  (Doc. 24).  As a result, the Commissioner limits his response to addressing those two issues.  (*Id*.).

The Court liberally construes briefs filed by *pro se* litigants.  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).  However, the Court may not serve as *de facto* counsel for a *pro se* litigant.  *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) ("[E]ven in the case of pro se litigants [the general rule of] leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." (quotation marks and citation omitted)); *see also Gamble v. Saul*, Case No. 8:20-cv-428-T-27CPT, 2020 WL 1557681, at *2 (M.D. Fla. Mar. 12, 2020).  The Court will therefore only address those arguments that can reasonably be said to have been raised in the Claimant's memorandum.

Upon review of the Claimant's memorandum and the Commissioner's response, the Court agrees with the Commissioner's interpretation of the Claimant's memorandum, with one exception. Specifically, the Court agrees that the Claimant's discussion of her pain and limitations throughout much of her memorandum calls into question the ALJ's credibility determination, while the new evidence attached to the memorandum is enough to raise a sentence six issue.   In addition to these issues, the Court finds the Claimant sufficiently raised one other issue that the Commissioner did not address – the ALJ's treatment of two medical opinions that the Claimant is disabled.   (Doc. 23 at 2 ("My doctors as stated in their letters rendered me disabled and have not seen or expect any improvement as there has only been progression in my MS thus far.").[3]   The Court will therefore begin by analyzing this argument and will then proceed to the arguments addressed in the Commissioner's response.

### A.   Medical Opinions

The Claimant suggests that the ALJ did not properly consider the medical opinions contained in letters from her doctors.   (Doc. 23 at 2).   While the Claimant does not identify the doctors who authored the letters, a review of the record reveals that two physicians – Drs. Natesha Ambs and David Khosrowzadeh – authored standardized letters opining that the Claimant will "not be able to work" for "[t]welve [m]onths or [m]ore" and is, therefore, disabled.   (R. 434, 554).[4]   The ALJ considered these opinions and found them unpersuasive.   (R. 18).   The ALJ did not err.

---

[3] A liberal reading of the Claimant's memorandum reveals no other arguments.

[4] These two doctors are the only medical sources who opined that the Claimant is disabled. The other medical opinions contained in the record, while addressing the Claimant's physical condition and functional limitations, do not contain any opinions that the Claimant is, in fact, disabled.   (See R. 76-80 (Dr. Thomas Bixler), 91-93 (Dr. Julie Bruno), 94-97 (Dr. Ronald Machado), 501-07 (Dr. Bella Dattani)).   Under a liberal reading of the Claimant's memorandum, it is clear she is only seeking to rely on the opinions that state she is disabled, therefore, the Court will not further address these other medical source opinions.   In any event, the record reveals that the

The Claimant filed her applications for disability benefits on August 7, 2017.   (R. 249-56).

Effective March 27, 2017, the Social Security Administration implemented new regulations related

to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.   When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.   The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).   We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. §§ 404.1520c(a), 416.920c(a).   Subparagraph (c) provides that the factors to be

considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which

includes consideration of the length of treatment relationship; frequency of examination; purpose of

treatment relationship; extent of treatment relationship; and examining relationship); (4)

specialization; and (5) other factors that tend to support or contradict a medical opinion or prior

administrative medical finding.   *Id*. §§ 404.1520c(c), 416.920c(c).

Pursuant to the new regulations, the Commissioner is not required to articulate how she

"considered each medical opinion or prior administrative medical finding from one medical source

individually."   20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).   Courts have found that "[o]ther

than articulating his consideration of the supportability and consistency factors, the Commissioner

is not required to discuss or explain how he considered any other factor in determining

---

ALJ considered this other medical opinion evidence (R. 18-20), and the ALJ did not commit any error.

persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (quoting *Mudge v. Saul*, No. 4:18CV693CDP, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019)); *see also Knecht v. Comm'r of Soc. Sec.*, No. 3:19-CV-000759, 2020 WL 4530725, at *7 (M.D. Pa. Aug. 6, 2020) ("Supportability and consistency are the most important factors in determining the persuasiveness of a medical source's medical opinion." (citing 20 C.F.R. § 404.1520c(b)(2)); *Stem v. Comm'r of Soc. Sec.*, No. CV 2:19-725, 2020 WL 4548056, at *2 n.1 (W.D. Pa. Aug. 6, 2020) (citations omitted) ("Consistency and supportability are the only factors ALJs must address in their written opinions.").

> Here, the ALJ considered the opinions from Drs. Ambs and Khosrowzadeh, stating:

> The undersigned is mindful of the fact that the record contains statements from sources expressing whether the claimant is able to work.  (Exhibit 3-F, page 3; 9-F, page 2)[.]  It is noted that statements of this nature, statements on issues reserved to the Commissioner, are neither inherently valuable nor persuasive.  Issues reserved to the Commissioner include whether or not a claimant is disabled, blind, able to work, or able to perform regular or continuing work.  (20 C.F.R. 404.1520(b))[.] Accordingly, the undersigned does not make an analysis of such statements.

(R. 18).   This determination is consistent with the law, because the issue of whether a claimant is disabled or unable to work is, as the ALJ noted, reserved to the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("A statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled."); *see also Hernandez v. Soc. Sec. Admin., Comm'r*, 761 F. App'x 901, 903-04 (11th Cir. 2019) ("[T]he ALJ correctly concluded that he was not required to consider Dr. Johnston's opinion that Hernandez's conditions prevented her from being able to work, as regulations reserve that decision to the Commissioner." (citing 20 C.F.R. § 404.1527(d)(1))).[5]  Accordingly, the ALJ did

---

[5]  In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.  *See* 11th Cir. R. 36-2.

not err by finding Drs. Ambs' and Khosrowzadeh's opinions unpersuasive. *See* SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). The Court therefore finds the Claimant's first assignment of error unavailing.[6]

### B. The Credibility Determination

The Claimant does not point to a specific issue or issues with the ALJ's credibility determination. (Doc. 23 at 1-2). Instead, the Claimant discusses the symptoms caused by her impairments suggesting that the severity of those symptoms undermines the ALJ's credibility determination and shows that she has greater limitations then those contained in the ALJ's RFC determination. (*Id.*). In response, the Commissioner argues that the ALJ properly considered the Claimant's subjective complaints and the ALJ's credibility determination is supported by substantial evidence. (Doc. 24 at 5-9). The Court agrees with the Commissioner.

A claimant may establish "disability through his own testimony of pain or other subjective

---

[6] The Court notes that Dr. Khosrowzadeh prescribed the Claimant a walker in May 2018, though he did not state how frequently the Claimant would need to use it. (R. 555). In her memorandum, the Claimant notes that she is using a walker more frequently (Doc. 23 at 2), but she does not appear to argue that the ALJ erred by not considering Dr. Khosrowzadeh's prescription (*see id.*). Nevertheless, the Court has considered whether the ALJ erred by not addressing the prescription for a walker and finds any error to be harmless. At the hearing, the Claimant's representative asked the Claimant how frequently she uses a walker. (R. 53). The Claimant testified that she may use her walker twice a week. (*Id.*). Based on this testimony, the Claimant's representative asked the Vocational Expert ("VE") whether the Claimant's use of a walker would preclude her from performing the three jobs the VE identified in response to the ALJ's first hypothetical question, which was consistent with the ALJ's RFC determination. (*Id.*). The VE testified that the Claimant's use of the walker would not preclude her from performing the jobs identified in response to the first hypothetical. (*Id.*). Accordingly, any error in not considering Dr. Khosrowzadeh's prescription for a walker is harmless, because the testimony at the hearing shows that use of a walker did not affect the Claimant's ability to perform other work in the national economy. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) ("When . . . an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.").

symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).   A claimant seeking to

establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).   If the ALJ determines that the claimant

has a medically determinable impairment that could reasonably produce the claimant's alleged pain

or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of

those symptoms limit the claimant's ability to work.   20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

In doing so, the ALJ considers a variety of evidence, including the claimant's history, the medical

records and laboratory findings, the claimant's statements, medical source opinions, and other

evidence of how the pain affects the claimant's daily activities and ability to work.   *Id*. at §§

404.1529(c)(1)-(3), 416.929(c)(1)-(3).   "If the ALJ decides not to credit a claimant's testimony as

to her pain, he must articulate explicit and adequate reasons for doing so."   *Foote*, 67 F.3d at 1561-

62.   The Court will not disturb a clearly articulated credibility finding that is supported by

substantial evidence.   *Id*. at 1562.

> The ALJ summarized the Claimant's testimony as follows:

> The undersigned considered claimant's alleged symptoms and functional limitations. The claimant alleged that she can stand 15 minutes, walk 10 minutes (before becomes easily fatigued), sit 10 to 15 minutes (depending on chair) and lift 15 pounds.   She alleged that she loses feeling in the right hand and has problems holding objects and drops things often.   The claimant indicated that her medications produce side-effects (weakness, nausea, fatigue, and headaches).   The claimant alleged back and leg pain and arm numbness.   She rated the back pain with an 8 based on a 10 point scale, but at hearing, she rated the pain as a 6 out of a 10.   She rated her arm pain as a 10, and the leg pain as a 7.   The claimant indicated that she is asthmatic and uses an inhaler and nebulizer.   The claimant testified that she uses a nebulizer once per month.   As part of her activities of daily living, the claimant indicated that she rests a lot when she is at home.   The claimant indicated that she does household chores with help, cannot cook, needs help to cook, some days, drives, gets a ride to work, texts family,

> and reads everyday.  She alleged difficulties remembering or cannot read long because of right eye blurry vision.  The claimant indicated that she is 5 feet 4 inches tall, and weighs 241 pounds.

(R. 20).  The ALJ subsequently found that the Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (R. 21).  In support, the ALJ explained:

> [T]he extent of pain and limitations are not consistent with her admitted daily activities.  Although she asserted that she is not active, rests a lot when at home, does household chores with help and cannot cook, she noted she drives or gets a ride to work.  In addition, the claimant testified that she works part time 8 hours per day, 2 days per week with Foster children helping them with homework, teaching them how to cook, making appointments, driving them to appointments, and teaching them living skills. Furthermore, the claimant is able to shop by herself for clothes, household items and groceries.  The claimant is able to work at a hobby or play a game.  She was able to prepare a complete meal without assistance.  (Exhibit 5-F, page 7)[.]  The claimant has stated that she helps take care of a rabbit and two dogs. (Exhibit 6-E, page 2)[.]  The claimant noted in her testimony that she reads every day and texts family members.  This level of activity is inconsistent with the claimant's allegation of disability.
>
> The undersigned has considered the claimant's course of medical treatment and use of prescription medication.   The claimant has been prescribed medication appropriate for her established impairments.  The claimant testified that her medication causes side effects including weakness, nausea, fatigue, and headaches. Medications have included Fioricet (Exhibit 1-F, page 55), Prednisone (Exhibit 3-F, page 18), Zoloft (Exhibit 6-F, page 16), Hydrocodone (Exhibit 10-F, page 27) and ProAir (Exhibit 10-F, page 28).  The claimant noted at the hearing that she only uses a nebulizer once a month.  The record does not suggest that she fails to receive significant relief of symptoms with the use of medication or that she has experienced the extent of the side effects, she alleged.  However, considering the pain and medication side effects that can reasonably be expected from the record, the undersigned has found an ability for simple routine work.

(R. 20).

The Claimant challenges the ALJ's credibility determination as a whole by describing the severity of her symptoms – pain, fatigue, weakness, etc. – caused by her impairments.  (R. 23 at 1-

2).  The Claimant also appears to discuss impairments and symptoms that were diagnosed or worsened after the ALJ's decision, such as her diagnosis of bilateral carpal tunnel syndrome (*Id.* at 2), which does not appear in the administrative record.  The Court is not persuaded by these arguments.

The ALJ considered the Claimant's testimony about intensity, persistence, and limiting effects of her symptoms, including pain, fatigue, and weakness, and found the objective medical evidence and the Claimant's daily activities, including her occasional work with foster children, did not support the alleged severity of her symptoms.  (R. 20).  While the Claimant does not specifically challenge any of the reasons supporting the ALJ's credibility determination, the Court has nevertheless considered whether those reasons are supported by substantial evidence.  Upon review of the record, the Court finds that the ALJ's reasons are supported by substantial evidence and, therefore, will not disturb the ALJ's credibility finding.  *See Foote*, 67 F.3d at 1561-62 (reviewing court will not disturb credibility finding with sufficient evidentiary support).

The foregoing holds true even in the face of the Claimant's apparent reliance on the worsening of her overall condition after the ALJ's decision, *e.g.*, the more frequent use of a walker, diagnosis of bilateral carpal tunnel syndrome, and the side effects of a new, unnamed medication. The Court cannot say that the ALJ's credibility determination is erroneous based on the new evidence because the Claimant has not shown that the evidence existed at the time of the ALJ's decision or relates back to the relevant period – *i.e.*, between the Claimant's alleged onset date (August 2, 2017) and the date of the ALJ's decision (October 31, 2018).  *See Lupardus v. Comm'r of Soc. Sec.*, No. 3:15-cv-243-J-PDB, 2016 WL 4536728, at *5 (M.D. Fla. Aug. 31, 2016) (explaining that if the claimant presents evidence after the ALJ's decision the Appeals Council must consider it if, among other things, it is chronologically relevant, *i.e.*, it relates to the period on or

before the ALJ's decision) (citations omitted).   For these reasons, the Court finds the Claimant's second assignment of error unavailing.

### C.  Sentence Six Remand

The Court interprets the Claimant's submission of new evidence that does not appear in the administrative record as a request that the case be remanded pursuant to sentence six of 42 U.S.C. § 405(g).   (Doc. 23 at 3-7).   The Commissioner argues that the new evidence does not warrant remand pursuant.   (Doc. 24 at 10-12).   The Court agrees with the Commissioner.

The sixth sentence of 42 U.S.C. § 405(g) ("sentence six") permits a district court to remand an application for benefits to the Commissioner for consideration of new evidence that previously was unavailable.   *Ingram v. Comm'r of Soc. Sec., Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). To show that a sentence six remand is warranted, "the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level."   *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)).

Along with her memorandum, the Claimant filed three distinct pieces of evidence: 1) part of a treatment note from Dr. Hal S. Pineless dated April 1, 2019 (Doc. 23 at 3-4); 2) an undated medication list (*Id*. at 5); and 3) what appears to be a screenshot from an online patient portal dated June 16, 2019 (*Id*. at 6-7).   With respect to the treatment note, the Claimant has only provided the fourth and fifth pages of the note.   (*Id*. at 3-4).   These pages contain a portion of the Claimant's physical examination, the physician's assessment, and a treatment plan.   (*Id*.).   The physical examination was largely unremarkable, with the exception of an impaired right optical nerve, decreased response to touch, pain, and temperature, and 4/5 strength in the right upper and lower

extremities.  (*Id*. at 3).   The Claimant was assessed with tingling and multiple sclerosis.  (*Id*. at 4).

The final two pieces of evidence – the medication list and screenshot – do not contain the Claimant's

name.  (*Id*. at 5-7).   As a result, the Court cannot confirm that the evidence actually relates to the

Claimant.   Aside from that issue, the evidence purportedly lists the Claimant's active impairments

and medications, nothing more.  (*Id*.).

The new evidence submitted by the Claimant does not warrant remand under sentence six.

First, remand is appropriate only where the new evidence relates "to the time period on or before

the date of the ALJ's decision."   *Archer v. Comm'r of Soc. Sec.*, 176 F. App'x 80, 82 (11th Cir.

2006) (citations omitted).   The evidence here – the April 1, 2019 treatment note, the medication list

identifying medications prescribed between February 14, 2019 and June 14, 2019, and the

screenshot dated June 16, 2019 – relate to events that occurred after the ALJ's October 31, 2018

decision and after the Appeals Council's February 8, 2019 denial of review.   And there is nothing

in this new evidence, particularly the treatment note, that relates back to the time period on or before

the date of the ALJ's decision.   Since the evidence does not relate back to the relevant period,

remand under sentence six is inappropriate.

The Claimant also has not shown that the evidence is material, *i.e.*, that a reasonable

probability exists that the evidence would have changed the outcome of his disability determination.

*Caulder*, 791 F.2d at 877.   While the treatment note shows some decreased sensation and strength

in the Claimant's right extremities, this is not enough to reasonably call into question the ALJ's

RFC determination limiting the Claimant to sedentary work.   Moreover, none of the evidence

contains medial opinions or functional limitations that are inconsistent with the ALJ's RFC

determination.  *See Archer*, 176 F. App'x at 82 (finding new medical evidence non-material where

the evidence did not place any limitations on the claimant's ability to perform light work as

originally found by the ALJ).   For these reasons, the Court finds the new evidence attached to the Claimant's memorandum is not material and, as a result, remand under sentence six is inappropriate. Accordingly, the Court finds the Claimant's third and final assignment of error unpersuasive.

In summary, the Claimant has not shown that the ALJ committed any legal error or that her decision is not supported by substantial evidence.   The Commissioner's final decision is therefore affirmed.

## V.      Conclusion

Accordingly, it is **ORDERED** that:

1.   The Commissioner's final decision is **AFFIRMED**.

2.   The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner and against the Claimant, and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on September 8, 2020.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Unrepresented Parties

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Emily Ruth Statum
Administrative Law Judge
Office of Hearings Operations
3505 Lake Lynda Dr
Suite 300
Orlando, FL 32817-9801